**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| GRANT A. LIVERETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:17-cv-811-TSE-IDD |
| ) | |
| DYNCORP INTERNATIONAL LLC, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## DECLARATION OF WADE CHILDS

I, Wade Childs, declare as follows:

1. My name is Wade Childs. I am over 21 years of age and am in no manner disabled from making the statements made in this Declaration. I give this Declaration in connection with the above-styled lawsuit.

2. I am employed by DynCorp International LLC ("DI") as a Program Manager. As Program Manager, I am responsible for managing and supervising all DI security personnel who work at Camp Bondsteel in Kosovo pursuant to the guard services contract between DI and the U.S. Army.

3. On December 4, 2012, Grant Liverett signed a Foreign Service Employment Agreement (FSEA) with DI for the position of Armed Guard (AG) at Camp Bondsteel, a U.S. Army base in Kosovo. The FSEA was for the period November 30, 2012 to November 29, 2013.

4. On November 26, 2013, Liverett signed a second FSEA with DI for the position of AG Post Supervisor at Camp Bondsteel in Kosovo. The FSEA was for the period November 30, 2013 to November 29, 2014.

5. As an AG Post Supervisor, Liverett was responsible for searching vehicles and visitors entering Camp Bondsteel for alcohol, explosives, weapons, and other contraband and preventing those items from being introduced on the camp. He was also responsible for notifying security personnel of attempted introductions of contraband onto Camp Bondsteel. As an AG Post Supervisor, Liverett had full working knowledge of and was trained on U.S. Army general orders and Camp Bondsteel battle drills. Liverett reported to me.

6. General Order #1 is a U.S. Army policy that prohibits the possession, introduction, and transfer of alcohol on military bases. It also states that "[a]lcohol will not be provided to any military person or DoD civilian."

7. Both FSEAs Liverett signed stated the following with respect to General Order #1: "Employees are prohibited from consuming, using or possessing alcohol while in Kosovo and employed under the contract of Armed and Unarmed Guard Services-Camp Bondsteel. Failure to adhere to this prohibition at any time during the term of this contract and under any circumstances will subject the Employee to disciplinary action up to and including termination of employment."

8. General Order #1 is contained in other DI documents provided to Liverett, including Certificate of Completion (stating that he completed a course on "general orders"), Standards and Conditions of Employment (acknowledging that he understood that misconduct including "possessing …. alcoholic beverages"), and Guard Mount Training (indicating that Liverett was trained on the "USE OF ALCOHOL POLICY").

9. Liverett volunteered to give a PowerPoint presentation on General Order #1 to other DI personnel at Camp Bondsteel in May 2014. One slide on his PowerPoint stated in all caps: "ALCOHOL WILL NOT BE INTRODUCED ONTO ANY MILLTARY

INSTALLATION." Another slide stated also in all caps: "ALCOHOL WILL NOT BE PROVIDED TO ANY MILITARY PERSON."

10. Battle Drill #17 is a related U.S. Army policy specific to Camp Bondsteel. It applies when "[p]erson(s) attempt to enter Camp Bondsteel with unauthorized items such as … alcohol." It requires contract guard force personnel to notify the Force Protection Office Center (FPOC) Supervisor "of all prohibited items found at the gate." It states that "[n]o items will be held for safekeeping by any contract guard personnel." It lists "[a]ll items prohibited under General Order #1" as "[e]xamples of unauthorized items."

11. Less than three weeks before the September 23, 2014 incident and during one of Liverett's shifts, he received training on Battle Drill #17.

12. On September 23, 2014, a group of U.S. Army and Serbian Army personnel arrived at Gate 1 where Liverett was working for DI as an AG Post Supervisor. Liverett learned that this group was trying to introduce alcohol onto Camp Bondsteel. Rather than immediately notify the FPOC supervisor as he was required and trained to do, Liverett told the group that he would hold the alcohol for safekeeping and permit it onto Camp Bondsteel if the base commander asked for it prior to the end of his shift. He then placed the alcohol underneath the desk at the Gate 1 supervisor shack. At the end of his shift, he poured the alcohol from the bottle and threw it away.

13. After learning of the incident, I reported to the U.S. Army factually what occurred at Camp Bondsteel Gate 1 on September 23, 2014 based on written incident reports from Liverett and two other DI personnel. Those reports indicated that Liverett took alcohol from a visitor to the base and "continued to hold it"; planned to provide the alcohol to military personnel to bring onto base if they came "back to retrieve it"; failed to notify the FPOC supervisor of the visitor's

3

attempt to enter Camp Bondsteel with alcohol; and "held [the alcohol] at the Gate 1 Supervisor shack" for safekeeping even though it was "against [DI] policy to hold alcohol for anyone at the gate.

14. DI was required to report the facts related to the September 23, 2014 incident to the U.S. Army pursuant to the contract between the U.S. Army and DI. That contract states that all DI personnel shall comply with General Order #1 while deployed in Kosovo and that DI must report any incidents in which General Order #1 could have been violated. It is ultimately, however, the U.S. Army's determination as to whether a civilian contractor violated General Order #1.

15. Specifically, I told the U.S. Army that Liverett (i) took alcohol from visitors to the base; (ii) planned to provide the alcohol to military personnel to bring onto base if they came back to retrieve it; (iii) held the alcohol for safekeeping; and (iv) failed to notify the FPOC supervisor of the visitors' attempt to enter Camp Bondsteel with alcohol. I did not tell the U.S. Army that Liverett consumed alcohol.

16. Based on these facts, the U.S. Army determined that Liverett violated General Order #1 and Battle Drill #17. The U.S. Army did not base its determination on Liverett consuming alcohol because I did not report that.

17. Under U.S. Army policy, a violation of General Order #1 and Battle Drill #17 automatically results in the individual being barred from entering any U.S. military base. The U.S. Army creates "bar access lists" to keep track of individuals who are barred from entering U.S. military bases. The U.S. Army Camp Bondsteel Area Support Team ("AST") created a bar access list for Camp Bondsteel using U.S. Army AST letterhead. The U.S. Army AST included

Liverett on the bar access list because the U.S. Army determined that he violated General Order #1 and Camp Bondsteel Battle Drill #17.

18. The very next day after the alcohol incident, September 24, 2014, Liverett resigned his position as AG Post Supervisor with DI.

19. DI accepted Liverett's resignation and directed him to depart Camp Bondsteel. Liverett eventually departed Camp Bondsteel on October 3, 2014.

20. I DELCARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed this 6th day of March, 2018.

Wade Childs