**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

GRANT A. LIVERETT, )
    Plaintiff, )
     )
    v. )     Case No. 1:17cv811
     )
DYNCORP INTERNATIONAL LLC, )
    Defendant. )
     )
     )

## MEMORANDUM OPINION

At issue in this defamation and tortious interference with business expectancy case is whether the undisputed factual record warrants the entry of summary judgment on both claims. Specifically, defendant argues that plaintiff has failed to establish a valid claim for defamation:

    (i) because defendant is entitled to absolute immunity for defendant's allegedly defamatory statements;

    (ii) because those statements were true; and

    (iii) because defendant, in making those statements, did not know the statements were false or negligently fail to discover their falsity.

Defendant also contends that summary judgment is appropriate on plaintiff's tortious interference claim because defendant did not use improper means or methods in any alleged interference with plaintiff's business expectancy.

Plaintiff opposes defendant's motion, arguing (i) that defendant is not entitled to immunity, and (ii) that there are disputes of material fact regarding whether defendant's statements were false and whether defendant acted with the requisite intent. Plaintiff also contends that defendant used improper means in interfering with plaintiff's contract.

1

These matters have been fully briefed and argued and are now ripe for decision. For the reasons that follow, defendant's motion for summary judgment on both claims must be granted, albeit not on all of the grounds defendant advances.

**I.**[1]

Plaintiff, Grant Liverett, is a resident of Charleston, South Carolina and a former employee of defendant. Defendant, DynCorp International LLC, is a Delaware corporation with its principal place of business in Mclean, Virginia.

On December 4, 2012, plaintiff signed a Foreign Service Employment Agreement ("FSEA") with defendant to serve as an Armed Guard at Camp Bondsteel, a U.S. Army base in Kosovo, for a one year period from November 30, 2012 until November 29, 2012. On November 26, 2013, plaintiff signed a second FSEA to serve as Armed Guard Post Supervisor at Camp Bondsteel from November 30, 2013 until November 29, 2014. In his role as Armed Guard Post Supervisor, plaintiff was responsible for searching vehicles and visitors entering the base for alcohol, explosives, weapons and other contraband. In the event that plaintiff encountered contraband in his searches, he was responsible for notifying his Force Protection Office Center ("FPOC") supervisor on the base.

As a part of his role as Armed Guard Post Supervisor, plaintiff was also trained on U.S. Army general orders and Camp Bondsteel battle drills, including General Order #1 and Battle Drill #17. General Order #1 is a U.S. Army policy that prohibits the "introduction, possession, use, sale, transfer, manufacture, or consumption of any alcoholic beverage or controlled

---

[1] The facts here are derived from defendant's list of undisputed facts, most of which were not specifically or properly disputed. Defendant, consistent with Local Rule 56(B) and the Rule 16(B) Scheduling Order, submitted in connection with its motion for summary judgment a separately captioned section listing in numbered-paragraph form all material facts as to which the defendant contends no genuine dispute exists. *See Liverett v. DynCorp Int'l, Inc.*, No. 1:17-cv-811 (E.D. Va. July 26, 2017) (Order). Although plaintiff purports to dispute some of the facts, as noted *infra*, the purported disputes are not supported by admissible record evidence.

substance." The Task Force Policy related to General Order #1 specifies that "[a]lclohol will not be provided to any military person or DoD civilian." Battle Drill #17 is a related U.S. Army policy, specific to Camp Bondsteel. Battle Drill #17 establishes procedures for when persons attempt to enter Camp Bondsteel with unauthorized items, including alcohol. Specifically, Battle Drill #17 provides that the contract guard force personnel must immediately notify the FPOC supervisor "of all prohibited items found at the gate" and specifies that "[n]o items will be held for safekeeping by any contract guard personnel."[2] The record makes clear that plaintiff was well aware of and trained in General Order #1 and Battle Drill #17.

The events at issue here occurred on September 23, 2014, and the material facts of that event are not disputed:

- Lieutenant Colonel Pelham and a group of Serbian Army personnel arrived at Gate 1 where plaintiff was serving as Armed Guard Post Supervisor and attempted to bring a bottle of Raki, an alcoholic drink, onto the base as a gift for the base commander. *See* Pl. Dep. 100:16-104:11.

- On learning about the existence of the bottle of Raki, plaintiff did not immediately report the attempt to bring the bottle of Raki to his FPOC supervisor as required by Battle Drill #17. *See* Pl. Dep. 67:2-19, 149:4-16.

- Instead, plaintiff stored the bottle of Raki in the Gate 1 supervisor shack. *See* Pl. Dep. 105:1-9, 106:2-21. If Lieutenant Colonel Pelham returned to the guard shack before the end of plaintiff's shift, plaintiff would have allowed him to retrieve the bottle of Raki. *See* Pl. Dep. 145:2-146:14.

- At the end of plaintiff's shift, when no one returned to retrieve the bottle of Raki, plaintiff poured out the contents of the bottle of Raki and discarded the bottle. *See* Pl. Dep. 149:17-22.[3]

---

[2] Plaintiff, in responding to this paragraph in defendant's list of undisputed material facts, does not dispute this fact but seeks to add the additional fact that Battle Drill #17 provides that "[s]ome of the unauthorized items listed in this battle drill are authorized to be brought onto CBS by certain personnel per the current access control matrix or letter to direct signed by the COR." *Id.* By citing this provision, plaintiff is essentially attempting to assert a defense to the actions the U.S. Army took in barring plaintiff from Camp Bondsteel. But that is a dispute between plaintiff and the U.S. Army, and has no bearing on the claims asserted against defendant.

[3] Importantly, the declaration of Wade Childs, plaintiff's supervisor who ultimately reported this incident to the U.S. Army, is not the source of the facts presented here; instead, the facts presented here are derived directly from plaintiff's own deposition. Childs's declaration is relied on only to establish the contents of Childs's statements to

- Later that day, FPOC Supervisor Johnathan Stanley ("Stanley"), another employee of defendant, contacted plaintiff about the incident and advised plaintiff to fill out an incident report about the incident.

- Plaintiff, FPOC Supervisor Stanley, and an additional post supervisor subsequently completed incident reports describing the incident.

- After reviewing the incident reports, Wade Childs ("Childs"), plaintiff's supervisor and an employee of defendant, reported the incident to the U.S. Army.[4]

- Specifically, Childs told the U.S. Army that (i) plaintiff confiscated the bottle of alcohol from visitors to the base and "continued to hold it"; (ii) plaintiff planned to return the bottle of alcohol to military personnel if they came back to retrieve it; (iii) plaintiff held the bottle of alcohol at the supervisor shack for safekeeping; and (iv) plaintiff failed to notify the FPOC supervisor of the visitors' attempt to enter Camp Bondsteel with alcohol. Childs Decl. ¶ 13.[5]

- Childs did not tell the U.S. Army that plaintiff had consumed alcohol or that plaintiff had violated General Order #1 or Battle Drill #17.

- Childs, in a sworn declaration, averred that he reported the September 23, 2014 incident to the U.S. Army because defendant's contract with the U.S. Army requires that defendant report any incidents in which General Order #1 may have been violated. Childs Decl. ¶ 14. Specifically, section 3.21 of the Performance and Work Statement provides that "[t]he Contractor must comply with the provisions of the Individual Reliability Program as defined in Chapter 3, AR 190-56, The Army Civilian Police and Security Guard Program." Chapter 3-1 of AR 190-56 in turn provides that "[s]upervisors at all levels have an inherent responsibility to inform the commander of all cases of erratic performance and poor judgment by personnel, on or off duty, that could affect [sic] on-the job reliability."

- Based on Childs's report, the U.S. Army determined that plaintiff had violated General Order #1 and Battle Drill #17. Defendant did not determine or report to the U.S. Army that plaintiff had violated either General Order #1 or Battle Drill #17.

---

the U.S. Army because Childs's declaration is direct evidence, not hearsay, as to what Childs reported to the U.S. Army, and indeed is the only record evidence of what Childs reported to the U.S. Army.

[4] Plaintiff argues, incorrectly, that these incident reports are inadmissible hearsay; the reports are not offered by defendant for the truth of the matters asserted, but rather to demonstrate the effect on the reader, namely the effect on Childs in causing Childs to report the incident to the U.S. Army. *See* Fed. R. Evid. 801(c)(2).

[5] Plaintiff attempts to dispute these facts regarding the contents of Childs's statements to the U.S. Army. This attempt fails because Childs's declaration is the only evidence of what Childs reported to the U.S. Army and that is undisputed. Plaintiff admits he has no personal knowledge of what Childs reported to the U.S. Army and can point to no facts in the record specifically disputing Childs's declaration that sets forth what Childs reported to the U.S. Army. Accordingly, the facts of what Childs reported are undisputed.

- U.S. Army policy provides that where, as here, an employee commits a violation of General Order #1 and Battle Drill #17, he or she is automatically barred from entering any U.S. military base. Accordingly, when the U.S. Army determined that plaintiff violated General Order #1 and Battle Drill #17, the U.S. Army Camp Bondsteel Area Support Team ("AST") added plaintiff to a bar access list, which tracks individuals who are barred from entering military bases. The U.S. Army, not defendant, placed plaintiff on the bar list.

- On September 24, 2014, the day after the incident, plaintiff resigned his position as Armed Guard Post Supervisor with defendant. Defendant accepted plaintiff's resignation and directed him to depart Camp Bondsteel, which he did on October 3, 2014.

- Following the events of September 23, 2014, plaintiff applied for and accepted a contractor position with Torres Advanced Enterprise Solutions, LLC ("Torres").

- On June 22, 2015, Torres entered into a subcontract agreement with plaintiff, which specified that plaintiff would serve as "Project Manager for the Camp Bondsteel Guard Services Program" and would perform work at Camp Bondsteel.

- On June 23, 2015, Della Hodges ("Hodges"), Director of AST Balkans for the U.S. Army, emailed Childs and asked whether plaintiff had resigned or was terminated from his previous post at Camp Bondsteel. Childs reminded Hodges that at the time of the incident, the U.S. Army barred plaintiff and ordered his removal within 48 hours because the U.S. Army determined that plaintiff had violated General Order #1 and Battle Drill #17.

- Two days later, on June 25, 2015, the U.S. Army emailed Torres and notified Torres that plaintiff was not allowed to work, live or visit Camp Bondsteel because he was charged with violating General Order #1.

- On September 26, 2015, Steven Gough ("Gough"), a representative of the U.S. Army, reached out to Childs and other individuals, requesting "all information regarding personnel that are barred from access to [Camp Bondsteel]." In response, Childs forwarded Gough's email to Hodges, noting that the bar list was missing terminations and departures and providing a copy of defendant's bar list.

- In November 2015, Torres informed plaintiff that he could not remain employed with Torres because he was not permitted to access Camp Bondsteel. Accordingly, on December 11, 2015, plaintiff left Kosovo and did not provide any additional services to Torres after that date.

On September 16, 2016, plaintiff filed an action for defamation against defendant in Circuit Court of the City of Newport News. On October 2, 2016, the Circuit Court of the City of Newport News entered an Order of Nonsuit pursuant to Va. Code § 8.01-380. Thereafter, on

5

April 11, 2017, plaintiff filed the complaint in this action, asserting a claim of defamation per se and a claim of tortious interference with business expectancy. Specifically, the complaint alleges that defendant defamed plaintiff when Childs stated that plaintiff committed a violation of General Order #1 and published a list of barred employees to the U.S. Army.

On March 9, 2018, defendant filed the motion for summary judgment at issue here contending that defendant is entitled to judgment as a matter of law on plaintiff's defamation claim because (i) defendant's statements are immune as statements from a government contractor to a U.S. government agency, and (ii) plaintiff has failed to adduce evidence that any of defendant's statements were false or that defendant possessed the requisite intent for defamation claims. Defendant also contends it is entitled to judgment as a matter of law on plaintiff's tortious interference claim because defendant did not use any improper methods to interfere with plaintiff's contract expectancy. In response, plaintiff contends that plaintiff's defamation claim survives because defendant was not under a duty to report any incident to the U.S. Army and because certain falsities in defendant's statements implied that plaintiff's behavior was more egregious than it truly was.

## II.

The standard of review on motions for summary judgment is too well-settled to warrant extended discussion. Under Rule 56, Fed. R. Civ. P., summary judgment is appropriate only where there is "no genuine dispute as to any material fact" such that the moving party "is entitled to judgment as a matter of law." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute exists if "there is sufficient evidence on which a reasonable jury could return a verdict in favor of the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating this question, courts must "view the evidence in the light most favorable to . . . the nonmovant."

*Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The nonmovant, however, cannot rely on "mere allegations;" rather, the nonmovant "must set forth specific facts that go beyond the mere existence of a scintilla of evidence." *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013) (internal quotations and citations omitted).

### III.

To establish a claim for defamation under Virginia state law,[6] a plaintiff must show "(1) publication of (2) an actionable statement with (3) the requisite intent." *Jordan v. Kollman*, 269 Va. 569, 575 (Va. 2005). To be actionable, the plaintiff bears the burden of proving that the statement is "both false and defamatory." *Jordan*, 269 Va. at 575; *see also Gazette, Inc. v. Harris*, 229 Va. 1, 15 (1985). In this regard, the Fourth Circuit has recognized that "[t]he falsity of a statement and the defamatory 'sting' of the publication must coincide—that is, where the alleged defamatory 'sting' arises from substantially true facts, the plaintiff may not rely on minor or irrelevant inaccuracies to state a claim for libel." *AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir.1990). With respect to the requisite intent[7] for a defamation claim, where, as here, the plaintiff is a private figure, the defendant may be liable if "the defendant either knew [the statement] to be false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based." *Gazette, Inc.*, 229 Va. at 15.[8]

Even if all three elements of defamation are present, a defamation claim can still be defeated by a finding of privilege or immunity. *Gazette Inc.*, 229 Va. at 18. In this respect, the Fourth Circuit

---

[6] A federal court sitting in diversity must apply the law of the state where it sits. *See generally Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

[7] The use of the term "intent" by the Supreme Court of Virginia does not mean that the plaintiff is required to show that the defendant intended to defame the plaintiff.

[8] *See also Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40, 46 (2009) ("The plaintiff also must show that the defendant knew that the statement was false or, believing that the statement was true, lacked a reasonable basis for such belief, or acted negligently in failing to determine the facts on which the publication was based.").

has made clear that government contractors are immune from defamation actions (i) where the allegedly defamatory statements are made by a "private party fulfilling its governmentally imposed duty to inform[,]" *Becker v. Philco Corp.*, 372 F.2d 771, 776 (4th Cir. 1967), and (ii) where the allegedly defamatory statements are "given by a government contractor and its employees *in response to queries* by government investigators engaged in an official investigation," *Mangold v. Analytic Servs., Inc.*, 77 F.3d 1442, 1449 (4th Cir. 1996).

Plaintiff's defamation claim here is premised on three allegedly defamatory statements: (i) Childs's initial report of the events of September 23, 2014 to the U.S. Army; (ii) Childs's June 2015 response to Hodges's email about the bar access list, and (iii) Childs's September 2015 response to Gough's email about the bar access list.  As described below, plaintiff's defamation claim fails because defendant is entitled to immunity for all three of these allegedly defamatory statements, and in the event that defendant is not immune, defendant's statements are not actionable because the undisputed record discloses that defendant's statements were true and even assuming the statements were false, plaintiff has not produced any evidence to show that Childs knew statements were false or that he was negligent in that regard.

**A.**

A careful review of the undisputed factual record reveals that defendant is entitled to immunity for each of Childs's allegedly defamatory statements.  First, with respect to Childs's initial oral report of the September 23, 2014 incident to the U.S. Army, defendant is entitled to immunity because Childs made his report pursuant to a governmentally-imposed duty to inform. The Performance Work Statement between defendant and the U.S. Army requires that contractors abide by Chapter 3 of AR 190-56.  Chapter 3 of AR 1950-56, in turn, provides that supervisors have an "inherent responsibility to inform the commander of all cases of erratic

performance and poor judgment … ." AR 190-56, ch. 3-1. Childs averred that he initially reported the September 23, 2014 pursuant to this contractual reporting requirement. Childs Decl. ¶ 14. Accordingly, because the initial 2014 statement was made to fulfill a "governmentally imposed duty to inform," defendant is entitled to immunity for that statement. *Becker*, 372 F.2d at 776.

Defendant is also entitled to immunity for Childs's June 23, 2015 and September 26, 2015 statements because the record reflects that Childs, an employee of a government contractor, made these statements in response to queries by government investigators. Specifically, Hodges, a U.S. Army representative, contacted Childs on June 23, 2015 and asked him whether plaintiff resigned or terminated. In response, Childs told Hodges that plaintiff resigned and summarized Hodges' instructions regarding plaintiff's removal from the base. Similarly, in September 2015, the U.S. Army reached out to Childs, requesting "all information regarding personnel that are barred from access to [Camp Bondsteel]." Childs responded to the email and provided an updated bar list based on defendant's terminations and departures. Because these statements were given by an employee of a government contractor in response to queries by government investigators, they are absolutely privileged and cannot be the basis for a defamation claim. *See Mangold*, 77 F.3d at 1449.

In sum, defendant is entitled to immunity for all three of the allegedly defamatory statements at issue here because Childs made the statements either (i) to fulfill a governmentally imposed duty to inform, or (ii) in response to an official query from the government.

**B.**

Even assuming defendant is not entitled to immunity for the statements made to the U.S. Army, summary judgment is nonetheless appropriate because there is no evidence that any of the statements was false or that defendant knew or should have known of any falsity.

To begin with, there is no record evidence that any of defendant's statements to the U.S. Army was false, and as such, none of these statements are actionable statements for the purposes of defamation. With respect to Childs's June 2015 and September 2015 responses to email inquiries from the U.S. Army, plaintiff does not, and cannot, argue that Childs's statements were false. In his June 2015 response to an inquiry from the U.S. Army about plaintiff's termination status, Childs stated that plaintiff was barred due to the U.S. Army's finding that he violated General Order # 1 and that plaintiff was ordered removed from the base by the U.S. Army. And in Childs's September 2015 response to the U.S. Army's request to update the bar access list, Childs sent an updated bar list that contained plaintiff's name. The undisputed factual record reveals that after the events of September 23, 2014, the U.S. Army determined that plaintiff violated General Order #1 and as a result, plaintiff was automatically barred from U.S. military bases. As such, Childs's statements in June and September 2015, reporting that plaintiff was barred from the base due to his violation of General Order #1, were true.

Plaintiff has similarly failed to adduce record evidence demonstrating that Childs's initial oral report to the U.S. Army was false. The undisputed factual record reflects that in September 2014, Childs told the U.S. Army that plaintiff confiscated the bottle of alcohol from visitors to the base, planned to return the bottle of alcohol to military personnel if they came back to retrieve it, held the bottle of alcohol at the supervisor shack for safekeeping, and failed to notify the FPOC supervisor

of the visitors' attempt to enter Camp Bondsteel with alcohol. Childs Decl. ¶ 13.[9] Plaintiff has adduced no record evidence demonstrating that these statements were false. Plaintiff himself testified at his deposition (i) that he confiscated contraband from Lieutenant Colonel Pelham and Serbian Army officials who attempted to enter the base, Pl. Dep. 98:18-98:22, (ii) that plaintiff told the Lieutenant Colonel Pelham that plaintiff would leave the alcohol at the guard post so that Lieutenant Colonel Pelham or the base commander could retrieve it later, Pl. Dep. 105:1-9, 145:2-146:14, (iii) that plaintiff put the alcohol in the guard office himself, Pl. Dep. 106:2-21, and (iv) that plaintiff did not contact the FPOC at the time the individuals attempted to bring alcohol on the base, Pl. Dep. 67:2-19, 149:4-16. In sum, Childs's statements to the U.S. Army are perfectly consistent with all other evidence in the record, and as such, there is no reasonable basis for concluding Childs's statements are false and actionable.

In an attempt to avoid this conclusion, plaintiff argues that Child's September 2014 statements to the U.S. Army were false because (i) the statements imply that plaintiff attempted to transport alcohol into the base, rather than preventing its entrance, (ii) plaintiff did not "have a plan" to provide the alcohol to personnel who returned to collect it, (iii) plaintiff confiscated the alcohol rather than "keep[ing] it for safekeeping," and (iv) plaintiff ultimately disclosed the incident when his FPOC supervisor asked plaintiff about the incident. First, nothing in what Childs reported implies that plaintiff attempted to transport alcohol onto the base; Childs reported that plaintiff confiscated the alcohol and put it in the guard shack. And the undisputed facts do show that plaintiff kept the

---

[9] The undisputed factual record demonstrates that Childs did not, as the complaint alleges, tell the U.S. Army that plaintiff consumed alcohol or that plaintiff violated General Order #1 or Battle Drill #17 in his initial report. Apparently recognizing this, plaintiff argues for the first time in his Brief in Opposition to Summary Judgment that the September 2014 statements made by Childs to the U.S. Army, *see supra* Section I, are the basis for his defamation claim. Defendant argues, also for the first time in its Reply Brief, that because plaintiff did not allege these statements as the basis for defamation in his complaint or in his answers to interrogatories, those statements are barred from serving as a basis for defamation by the one-year statute of limitations. Because the parties devoted little attention to this point, the analysis here proceeds on the assumption that these statements are not time-barred, but for the reasons noted, plaintiff's defamation claim fails because he has adduced no record evidence demonstrating that Childs's statements to the U.S. Army were false.

11

alcohol in the guard shack and would have allowed Lieutenant Colonel Pelham to retrieve the bottle of alcohol if he had returned before the end of plaintiff's shift. The undisputed record also discloses that plaintiff did not immediately report the incident to his FPOC supervisor, instead only discussing the incident when his FPOC supervisor approached him and asked him to write an incident report.

And in any event, these are precisely the kind of minor, semantic or irrelevant discrepancies that cannot, as a matter of law, form the basis of a defamation claim where, as here, the "gist or 'sting' of a statement is substantially true." *AIDS Counseling & Testing Ctrs.*, 903 F.2d at 1004. Plaintiff was automatically barred from U.S. Army bases when the U.S. Army determined, based on Childs' report of the events of September 23, 2014, that plaintiff violated General Order #1 and Battle Drill #17. Importantly, the U.S. Army could have made precisely the same determination based on plaintiff's own description of the events of September 23, 2014. General Order #1 and Battle Drill #17 prohibit the introduction of alcohol into the base, prohibit armed guards from keeping any alcohol at the gate, and require armed guards immediately to notify the FPOC of any prohibited items found at the gate. Plaintiff testified in his deposition that on September 23, 2014, (i) plaintiff confiscated alcohol from a high-ranking official, (ii) plaintiff put the alcohol in the guard's office so that the base commander could retrieve it later; and (iii) plaintiff did not contact the FPOC at the time the individuals attempted to bring alcohol on the base. As such, there can be little doubt that had Childs reported the events precisely as plaintiff described them in his deposition, the U.S. Army would still have found that plaintiff violated General Order #1 and Battle Drill #17. In other words, the "gist" or "defamatory sting" of Childs's statements was substantially true and consistent with plaintiff's own report of the September 23, 2014 incidents. Accordingly, any minor discrepancies are irrelevant and cannot be the basis for a defamation claim.

Even assuming, *arguendo*, that Childs's statements to the U.S. Army allowed the inferences plaintiff draws, defendant is still entitled to judgment as a matter of law because there

is no record evidence suggesting that defendant acted with the requisite intent—that is, that defendant either knowingly made a false statement or negligently failed to ascertain whether the statements were false. To begin with, defendant did not know or have reason to believe that any aspect of his statements permitted any false implications. The record discloses that Childs relied on written incident reports from two of defendant's employees as well as plaintiff himself when he reported the September 23, 2014 events to the U.S. Army. Those incident reports, including plaintiff's, all reflected the same version of events: (i) plaintiff found a bottle of alcohol in a bag associated with Lieutenant Colonel Pehlman and Serbian Army personnel; (ii) plaintiff confiscated the bottle of alcohol at the gate; (iii) plaintiff planned to retain the alcohol at the gate until the end of his shift and if no one returned to collect the alcohol, he planned to pour the contents of the bottle out; and (iv) when no one came to retrieve the bottle by the end of his shift, plaintiff poured out the bottle's contents and discarded the bottle. There is simply no evidence suggesting that Childs negligently failed to ascertain whether his statements were false in any respect. Again, all accounts of the incident reflected the same set of events and there was no discrepancy that would have prompted more careful review. Accordingly, plaintiff has failed to identify any record evidence demonstrating that Childs acted with the requisite intent in making any statement to the U.S. Army, and as such, plaintiff's defamation claim cannot survive summary judgment.

In sum, plaintiff has failed to adduce record evidence showing (i) that Childs's statements to the U.S. Army were false in any respect or (ii) that Childs knew the statements were false or was negligent in failing to ascertain whether the statements were false. Accordingly, defendant is entitled to judgment as a matter of law on plaintiff's defamation claim.

**IV.**

Under Virginia law, a claim of tortious interference with business expectancy requires the plaintiff to establish that "(1) [the plaintiff] had a contract expectancy; (2) [the defendant] knew of the expectancy; (3) [the defendant] intentionally interfered with the expectancy; (4) [the defendant] used improper means or methods to interfere with the expectancy; and (5) [the plaintiff] suffered a loss as a result of [the defendant's] disruption of the contract expectancy." *Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co.*, 254 Va. 408, 414 (1997). A defendant employs improper methods where those methods are "illegal, independently tortious, or violate[] an established standard of trade or profession." *Dunn, McCormack & MacPherson v. Connolly*, 281 Va. 553, 559 (2011). In this regard, a claim for tortious interference with business expectancy provides redress for acts akin to "'violence, threats or intimidation, bribery, [or] unfounded litigation,' not the ordinary interpersonal conflicts of the workplace." *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 322 (4th Cir. 2012) (quoting *Duggin v. Adams*, 234 Va. 221, 227 (1987)).

Plaintiff here cannot point to any record evidence suggesting defendant employed improper methods when Childs reported the September 23, 2014 incident to the U.S. Army. The only evidence in the record discloses that Childs reported events that occurred relating to defendant's employees on September 23, 2014 relying on three incident reports. The record is entirely devoid of any evidence of illegal or independently tortious conduct or conduct that violates an established standard of trade or profession.

Attempting to avoid this conclusion, plaintiff contends that defendant employed improper methods in June 2015 when Childs responded to Hodges's request for information and reminded her that the U.S. Army barred plaintiff from access to Camp Bondsteel based on his violation of General Order #1. This contention fails; the Fourth Circuit has recognized that "if a [statement] is privileged against suit for defamation, it must also be protected in an action for interference

14

with business." *Shirvinski*, 673 F.3d at 322 (quoting *McLaughlin v. Copeland*, 455 F. Supp. 749, 752 (D. Del. 1978)). As described *supra* Section III.A, defendant is entitled to absolute immunity with respect to plaintiff's June 2015 and September 2015 statements because they were "given by a government contractor . . . *in response to queries* by government investigators engaged in an official investigation." *Mangold*, 77 F.3d at 1449. Accordingly, Childs's statements are similarly protected in an action for interference with business, and plaintiff's tortious interference with business claim cannot survive.

In sum, because plaintiff has failed to adduce any record evidence demonstrating that defendant used "improper means or methods" to interfere with plaintiff's business expectancy, defendant is entitled to judgment as a matter of law on plaintiff's claim for tortious interference with business expectancy.

## V.

In conclusion, defendant is entitled to judgment as a matter of law on both plaintiff's defamation and tortious interference with business expectancy claims because (i) defendant is entitled to immunity for Childs's statements to the U.S. Army and (ii) there is no record evidence supporting plaintiff's assertion that defendant's statements were false, that defendant acted with the requisite intent to establish a claim for defamation, or that defendant used improper means to interfere with plaintiff's business expectancy. At bottom, plaintiff's arguments amount to disagreement with the U.S. Army's finding that plaintiff violated General Order #1 and Battle Drill #17, and the U.S. Army's decision to bar plaintiff from the base. But that finding and that decision were made by the U.S. Army, not by defendant, and any problems plaintiff has with those decisions should have been raised with the U.S. Army.

An appropriate Order will issue.

Alexandria, Virginia
March 28, 2018

/s/
T. S. Ellis, III
United States District Judge